STATE of Wisconsin, Plaintiff-Respondent,

v.

Larry Darnell LEE, Defendant-Appellant.†

Court of Appeals

*No. 89-2324-CR. Submitted on briefs May 3, 1990.—Decided June 19, 1990.*

(Also reported in 458 N.W.2d 562.)

†Petition to review denied.

126

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Larry Darnell Lee appeals from a judgment convicting him of retail theft in violation of sec. 943.50(1m) & (4)(b), Stats.[1] He argues that he was

---

[1]Section 943.50(1m), Stats., provides:

> Whoever intentionally alters indicia of price or value of merchandise or who takes and carries away, transfers, conceals or retains possession of merchandise held for resale by a merchant or

127

unlawfully stopped by a private security guard, and that the merchandise he stole and the statements he made must therefore be suppressed. We disagree. Since this is the only issue on appeal, we affirm.[2]

## I.

On January 22, 1988, Richard D. McDonnell, an employee of Mayfair Mall Security, a non-governmental entity, was working in the Mayfair Mall at 2500 North Mayfair Road, Wauwatosa, Wisconsin, when, as he testified at the suppression hearing, he saw Lee "carrying a large garbage bag," and "walking very fast" towards an exit:

> At that time I just seen [sic] how fast he was going, and I was curious that he was carrying a large garbage bag, so I followed him down and right as he was going out the exit, I asked him, "I don't believe we sell any garbage bags in here, why do you have a garbage bag?"[3] And he told me it wasn't his bag, it didn't belong to him. So I said, "Well, if it don't [sic] belong to you, I'll take the bag." At that time I asked him if he would come along and be checked out, and he said

of the merchant without his or her consent and with intent to deprive the merchant permanently of possession, or the full purchase price, of the merchandise may be penalized as provided in sub. (4).

Section 943.50(4)(b), Stats., provides:

> Whoever violates this section is guilty of:
>
> . . ..
>
> (b)   A Class E felony, if the value of the merchandise exceeds $500 but not $2,500.

[2]Lee's counsel conceded that his suppression motion hinged on his contention that the stop was unlawful.

[3]McDonnell later testified that although packaged garbage bags were sold by Walgreens at the Mayfair Mall, "[t]hey don't sell any single garbage bags."

fine, and we went and I took him in to Richard Bennett's, asked him if I could look in the bag. He said fine. I seen [*sic*] tags and all that in—and notified Wauwatosa Police on it.

There was stolen clothing in the garbage bag, but McDonnell had not seen Lee take any of the items. Police officers from the Wauwatosa Police Department arrived and arrested Lee.

## II.

Lee argues that McDonnell, the private security guard, did not have probable cause to stop and detain him. Section 943.50(3), Stats., provides:

> A merchant or merchant's adult employe who has probable cause for believing that a person has violated this section in his or her presence may detain the person in a reasonable manner for a reasonable length of time to deliver the person to a peace officer, or to his or her parent or guardian in the case of a minor. The detained person must be promptly informed of the purpose for the detention and be permitted to make phone calls, but he or she shall not be interrogated or searched against his or her will before the arrival of a peace officer who may conduct a lawful interrogation of the accused person. Any merchant or merchant's adult employe who acts in good faith in any act authorized under this section is immune from civil or criminal liability for those acts.

This statute was derived from a shopkeeper's common-law right to stop and detain, but not arrest, suspected shoplifters who were believed to have committed misdemeanors. *See Radloff v. National Food Stores, Inc.*, 20 Wis. 2d 224, 228, 121 N.W.2d 865, 867 (1963); *Restatement (Second) of Torts* sec. 120A (1964) ("One who rea-

sonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts.").[4] By its express terms, sec. 943.50(3) requires the merchant to have "probable cause" before a suspected shoplifter may be detained. We therefore need not determine whether, or to what extent, McDonnell was acting as an agent of the state,[5] as Lee argues, or, if so, whether probable cause would be necessary under a Fourth-Amendment analysis, as Lee also argues, rather than some lesser standard.[6]

[4]Although a published decision of the Court of Appeals is binding on all panels of the court, *see In re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149–150 (1978), we may withdraw dictum, *see Nickel River Invs. v. City of LaCrosse Board of Review,* 156 Wis. 2d 429, 431 n.2, 456 N.W.2d 797, 798 n.2 (Ct. App. 1990) (withdrawing *dictum* in *Schwochert v. Marquette County Bd.,* 132 Wis. 2d 196, 389 N.W.2d 841 (Ct. App. 1986)). We withdraw the following *dictum* in *Hainz v. Shopko Stores, Inc.,* 121 Wis. 2d 168, 172, 359 N.W.2d 397, 400 (Ct. App. 1984), which cites *Radloff:* "At common law, a merchant was without privilege to detain a shoplifter without a warrant, even if the misdemeanor was committed in his presence."

[5]The Fourth Amendment's prohibition of unreasonable searches and seizures applies only to government officers or agents, *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. —, —, 109 S. Ct. 1402, 1411, 103 L. Ed. 2d 639, 657 (1989), but "[t]he fact that the Government has not compelled a private party to perform a search does not, by itself, establish that the search is a private one," *id.,* 489 U.S. at —, 109 S. Ct. at 1411, 103 L. Ed. 2d at 658.

[6]*See Adams v. Williams,* 407 U.S. 143, 145–146 (1972) (A police officer may briefly stop a "suspicious individual, in order to

"Probable cause" is a term well-known in the law, and—absent any indication to the contrary—we assume that the legislature intended that the phrase be construed according to its generally accepted meaning. *See* sec. 990.01(1), Stats. ("All words and phrases . . . that have a peculiar meaning in the law shall be construed according to such meaning" unless the result would be "inconsistent with the manifest intent of the legislature."). There is probable cause for a belief when there are "sufficient facts" to support it, *State v. Starke,* 81 Wis. 2d 399, 408, 260 N.W.2d 739, 744 (1978), based on a common sense "assessment of probabilities in particular factual contexts," *Illinois v. Gates,* 462 U.S. 213, 232 (1983), and the " 'practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' " *id.,* 462 U.S. at 231 (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)). Thus, probable cause has been equated to "a fair probability." *Gates,* 462 U.S. at 238. We must examine what McDonnell knew at the time he confronted and temporarily detained Lee in order to determine whether McDonnell had probable cause to believe that Lee had violated sec. 943.50, Stats. Since the historical facts are undisputed, this is a legal matter, which we decide independently. *Johnson v. K-Mart Enters., Inc.,* 98 Wis. 2d 533, 539, 297 N.W.2d 74, 77 (Ct. App. 1980).

---

determine his identity" and investigate if that is "reasonable in light of the facts known to the officer at the time," because "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.").

■ Lee argues that a "merchant or merchant's employee must have probable cause to believe [that] the individual detained committed a retail *theft* in his or her presence." (Emphasis supplied.) We disagree. Section 943.50(3), Stats., merely requires that the merchant or employee have "probable cause for believing that a person has violated this section in his or her presence"; the actual theft need not be committed in the presence of either the merchant or the merchant's employee. As we have seen, sec. 943.50(1m), Stats., prohibits any of the following:

— the altering of "indicia of price or value of merchandise";

— the taking and carrying away of merchandise;

— the transfer of merchandise;

— the concealment of merchandise;

— the retention of possession of merchandise;

all without the merchant's consent, and "with intent to deprive the merchant permanently of possession, or the full purchase price, of the merchandise." Section 943.50(3) is therefore satisfied when the merchant or the merchant's employee has probable cause to believe that any of the acts prohibited by sec. 943.50(1m) has been committed in his or her presence.

■ According to McDonnell's uncontradicted testimony, Lee was "walking very fast" towards a mall exit, and was carrying a large garbage bag close to his body. Although McDonnell did not know it at the time, the bag contained six women's two-piece suits and obviously displayed the bulk of such items. Single garbage bags were not sold in the mall, and the merchants usually

disposed of their trash after normal business hours and used carts. McDonnell, who had worked at Mayfair Mall for eight years, told the trial court that he had never before seen someone walk out of the mall with a garbage bag over his or her shoulder. Clearly, there was a "fair probability," *see Gates,* 462 U.S. at 238, that Lee, quickly making his way towards an exit with a large garbage bag pressed close to his body, was concealing and carrying away merchandise held for resale without a merchant's consent. Thus, McDonnell had probable cause to believe that Lee had violated sec. 943.50(1m), Stats.[7] Under the circumstances, McDonnell not only had probable cause to stop Lee, but would have been derelict in his duty if he had merely watched Lee walk briskly out of Mayfair Mall with his sack of stolen suits.

*By the Court.*—Judgment affirmed.

___

[7]We therefore need not decide whether the level of knowledge necessary to support a brief stop and inquiry under sec. 943.50(3), Stats., is less than that needed to support a search. *Cf. Starke,* 81 Wis. 2d at 411, 260 N.W.2d at 746 (The level of knowledge necessary to support a search, based on probable cause, is less than the probable cause needed to support a bind-over following a preliminary examination under sec. 970.03(1), Stats.). We also need not consider whether a violation of sec. 943.50(3) requires imposition of the exclusionary rule. *See New Jersey v. T.L.O.,* 469 U.S. 325, 333 n.3 (1985) (Supreme Court's conclusion that search of student's purse by public school teacher did not violate the Fourth Amendment did "not implicitly determine that the exclusionary rule applies to the fruits of unlawful searches conducted by school authorities.").